**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| JOHN BRYANT and DAVID LONDO, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. 4:20-cv-61-AWA |
| Plaintiffs, | : : | |
| v. | : : | |
| KING'S CREEK PLANTATION, L.L.C., VACATION RESERVATION CENTER, LLC, TREKAGO TRAVEL GROUP, LLC and JOHN DOE CORPORATION | : : : : | **FIRST AMENDED COMPLAINT – CLASS ACTION** **JURY TRIAL DEMANDED** |
| Defendants. | : : | |
| _____/ | | |

Plaintiffs David Londo and John Bryant (hereinafter referred to as "Plaintiffs"),

individually and on behalf of all others similarly situated, allege on personal knowledge,

investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      "If robocalls were a disease, they would be an epidemic." *Rage Against*

*Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM),

ttps://www.consumerreports.org/cro/magazine/ 2015/07/rage-against-robocalls/index.htm.

"Robocalls" are the number one consumer complaint in America today.

2.      Even as far back as 2012, the Pew Research Center reported 69 percent of

cellular users who use text messaging receive unwanted text message spam, with 25 percent of

them receiving it on a weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone*

*Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-

phone-problems.

3.      Robocalls, including automated calls have only increased since the 2012 study. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

4.      "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

5.      This case involves a campaign by King's Creek Plantation, L.L.C. ("King's Creek") to market its services through the use of automated telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

6.      King's Creek has a relationship with a series of third party telemarketers, including Vacation Reservation Center, LLC and John Doe Corporation, who make, or hire others, such as Trekago Travel Group, LLC, automated calls for King's Creek.

7.      Moreover, King's Creek's vendors sent multiple calls to residential telephone numbers that are registered on the National Do Not Call List (hereafter "NDNC"), which is a separate and additional violation of the TCPA. The recipients of these illegal calls, which include Plaintiffs and the proposed classes, are entitled to damages under the TCPA.

8.      Finally, Mr. Bryant also seeks to represent a similarly situated class of individuals for violations of the Virginia Telephone Privacy Protection Act, Va. Code Title 59.1, Chapter 44 ("VTPPA").

## PARTIES

9.      Plaintiff David Londo is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Massachusetts.

10.     Plaintiff John Bryant is, and at all times mentioned herein was, an individual citizen of Virginia.

11.     Defendant King's Creek, LLC is a Virginia limited liability company, with a principal place of business of 191 Cottage Cove Lane in Williamsburg, VA 23185, and a registered agent of Joseph D. Cantrell at the same address.

12.     Defendant Vacation Reservation Center, LLC is a Virginia limited liability company that also has a principal place of business of 191 Cottage Cove Lane in Williamsburg, VA 23185, and a registered agent of Kenneth V. Farino at the same address.

13.     Defendant Trekago Travel Group, LLC is a Nevada limited liability company that has a principal place of business at 1180 N. Town Center Dr., Las Vegas, NV 89144 and a registered agent of United States Corporation Agents, Inc., 500 N. Rainbow Blvd., Suite 300A, Las Vegas, NV 89107.

14.     Defendant John Doe Corporation is a yet unidentified telemarketing vendor of King's Creek that contacted Mr. Bryant.

## JURISDICTION AND VENUE

15.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

16.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

17.      This Court has personal specific jurisdiction over Trekago and John Doe Corporation because the company contracted with King's Creek and/or Vacation Reservation Center, LLC in this District to make calls to individuals in this District.

18.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the illegal telemarketing calls that are the subject of this putative class action lawsuit were made into this District and based on contracts entered into in this District.

## TCPA BACKGROUND

Calls Made Using an "Automated Telephone Dialing System"

19.      The TCPA regulates, among other things, the use of a pre-recorded message or an automated telephone dialing system ("ATDS") to make calls or send automated calls.  *See* 47 U.S.C. § 227, *et seq*.; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20.     Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

21.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).  The first component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists of recipients was . . . covered by the TCPA").

5

22.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

23.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

24.     Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

25.     In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

26.     Pursuant to this statutory mandate, the FCC issued two regulations, only one of which is relevant here.

27.     The relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

28.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

29.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

30.     These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

31.     Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

32.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

33.     Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

34.     Consent is irrelevant to § 64.1200(d).

35.     A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

36.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR §

64.1200(e).

37.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

38.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

39.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Virginia Telephone Privacy Protection Act

40.     The VTPPA also restricts telemarketing calls that are made to consumers in Virginia.

41.     The VTPPA requires "[a] telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person." Va. Code Title 59.1-512.

42.     The VTPPA also states that "No telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry maintained by the federal government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. § 64.1200." Va. Code Title 59.1-514.

43.     The VTPPA allows for $500 for each negligent violation and up to $1,500 for each willful violation. Va. Code Title 59.1-515.

## FACTUAL ALLEGATIONS

44.     Defendant King's Creek is a "person" as the term is defined by 47 U.S.C. § 153(39).

Calls to Plaintiff Londo

45.     At no point has Plaintiff Londo sought out or solicited information regarding Defendant King's Creek's services.

46.     Plaintiff Londo's telephone number, XXX-XXX-3007, is registered to a cellular telephone service.

47.     The Plaintiff Londo received at least two telemarketing calls promoting King's Creek Services in December and January of 2020.

48.     One such call was on January 6, 2020.

49.     Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

50.     The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

51.     The dialing system used by Kings Creek also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

52.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

53.     As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

54.     The dialing system can do this by inputting a straightforward computer command.

55.     Following that command, the dialing system will sequentially dial numbers.

56.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

57.     This would be done without any human intervention or further effort.

58.     The calls came from "spoofed" Caller ID numbers, including (757) 772-1059.

59.     Call recipients have identified that caller identification number as unwanted spam:



**Unsolicited**
13 Dec 2019
Call center in Hampton Roads. Calls constantly. Don't think they know what Do-Not Call List is. *See* https://800notes.com/Phone.aspx/1-757-772-1059 (Last Visited February 14, 2020).

60.     The application NomoRobo, winner of the FTC's contest related to tracking and stopping unwanted calls, also has reported calls from that number as unwanted solicitations. *See* https://www.nomorobo.com/lookup/757-772-1059. (Last Visited February 14, 2020).

61.     As a result, the system that sent automated calls to Plaintiff Londo qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

62.     When the call connected with a live representative, the Plaintiff attempted to ascertain their identity.

63.     The call promoted the Defendant's property and services as a promotional getaway.

64.     The call ended with an e-mail from "Summer Lopez", which included a "confirmation letter" from King's Creek Plantation.

65.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for King's Creek's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

66.     Moreover, since 2009, the Plaintiff Londo's cellular telephone number has been listed on the NDNC list.

67.     Plaintiff Londo's number is used exclusively for residential, non-commerical purposes.

68.     Plaintiff Londo's cellular telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising King's Creek's goods or services.

Calls to Plaintiff Bryant

69.     At no point has Plaintiff Bryant sought out or solicited information regarding Defendant King's Creek's services.

70.     Plaintiff Bryant's telephone number, 757-XXX-0212, is registered to a cellular telephone service.

71.     The Plaintiff Bryant has received a series of telemarketing calls from King's Creek Plantation, or from John Doe Corporation calling on behalf of King's Creek.

72.    On February 18, 2020, Mr. Bryant received a telemarketing call from (951) 790-2620.

73.    This is a non-working number.

74.    When Mr. Bryant answered the call, the caller stated "Yea, hi there, my name is Walter and I'm calling on behalf of Kings Creek Planation here at Williamsburg VA"

75.    Plaintiff clearly communicated to caller he did not want to be called.

76.    The Plaintiff also received calls made with an autodialer.

77.    Those calls that were answered all followed a similar pattern.

78.    Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

79.    The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

80.    The dialing system used by Kings Creek also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

81.    Loading a list of telephone numbers into the dialing system and pressing a single command does this.

82.    As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

83.    The dialing system can do this by inputting a straightforward computer command.

84.    Following that command, the dialing system will sequentially dial numbers.

85.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

86.     This would be done without any human intervention or further effort.

87.     One such call was on February 28, 2020.

88.     When Mr. Bryant answered the call, the caller stated "Yea hi there, my name is Joshua and I'm calling on behalf of Kings Creek Planation here in Williamsburg VA".

89.     The caller then began a solicitation similar in format to previous calls made on behalf of the Defendant.

90.     Plaintiff asked caller if he had run Plaintiffs name through the Do Not Call Registry prior to the call, to which he replied, "NO".

91.     Plaintiff asked if the caller had received any training on the Do Not Call laws, to which he replied "not yet".

92.     Plaintiff asked the caller if he has ever read the Kings Creek Do Not Call Policy, to which the caller replied "no".

93.     Plaintiff then terminated the call.

94.     On March 30, 2020 the Plaintiff received another call.

95.     When Mr. Bryant answered the call, the caller stated "Hi, this is Series and I'm calling on behalf of Kings Creek Plantation."

96.     The caller then began a solicitation similar in format to previous calls made on behalf of the Defendant.

97.     The call was then transferred to a manager who stated after the initial pleasantries: "John this is not the first time I have talked to you just to be transparent and I do apologies my associate called you. I know you are on the Do Not Call List. . .".

98.     Plaintiff then terminated the call.

99.     The calls received by Plaintiff Bryant were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for King's Creek's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

100.     Moreover, the Plaintiff Bryant's cellular telephone number has been listed on the NDNC list for more than a year prior to the calls at issue.

101.     During the time that the Plaintiff Bryant's number was called in 2020, it was used exclusively for residential, non-commercial purposes.

102.     Plaintiff Bryant's cellular telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising King's Creek's goods or services.

103.     The calls were not necessitated by an emergency.

104.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  Plaintiff and the Class Members were also harmed by use of their cell phone battery and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

## KING'S CREEK AND VACATION RESERVATION CENTER'S LIABILITY

105.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

106.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

107.    In fact, the Federal Communication Commission has instructed that sellers such as King's Creek, and their marketing arm Vacation Reservation Center, may not avoid liability by outsourcing telemarketing to third parties, such as Trekago and John Doe Corporation:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

108.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

109.    King's Creek and Vacation Reservation Center are liable for the telemarketing calls made by the telemarketing vendors they hire.

110.    Vacation Reservation Center, located at the same address as King's Creek, exists for the purpose of hiring and supervising third party call centers to generate new business for King's Creek.

111.    King's Creek controls the day-to-day activities of Trekago and John Doe Corporation.

112.    King's Creek could have restricted Trekago and John Doe Corporation from using automated telemarketing, but it didn't.

113.    King's Creek restricts the geographic location to which its telemarketing vendors, can call by limiting them to calling Virginia consumers.

114.    King's Creek also required the vendors to use certain dialing platforms for their telemarketing calls.

115.    King's Creek also accepted the benefits of Trekago and John Doe Corporation illegal telemarketing by accepting reservations, even though those policies were generated through illegal telemarketing.

116.    King's Creek knew (or reasonably should have known) that Trekago and John Doe Corporation was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

117.    In fact, King's Creek has received complaints and previously been sued for its vendors' violations of the TCPA.

118.    Remarkably, Mr. Bryant himself has previously sued King's Creek for the conduct of its telemarketing companies, resulting in a win at trial.

119.    Furthermore, King's Creek acknowledged to Mr. Bryant that he shouldn't have been called after Mr. Bryant lodged a complaint following the February 28, 2020 call.

120.    Nonetheless, King's Creek's vendor made another call to Mr. Bryant on March 30, 2020.

121.    However, despite those complaints and lawsuits, King's Creek did not adequately investigate the calling conduct of Trekago and John Doe Corporation.

122.    King's Creek also grants the third parties it works with for telemarketing calls, including Trekago and John Doe Corporation, access to their system for making reservations.

123.    Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

124.    The VTPPA provides that:

A seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of § 59.1-511, 59.1-512, 59.1-513,  or 59.1-514 and the telephone solicitor making or initiating the telephone call shall be jointly and severally liable for such violation.

A telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call. The presumption may be rebutted if it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent.

Va. Code Title 59.1-514.

## CLASS ACTION ALLEGATIONS

125.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

126.    Plaintiffs brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

127.    Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Robodialing Class:** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more autodialed calls on their cellular telephone from or on behalf of Defendants', sent via the same, or substantially similar, system used to contact the Plaintiffs.

**National Do Not Call Registry Class**: All persons in the United States whose telephone numbers were on the National Do Not Call Registry for more than 30

days, but who received more than one telephone solicitation telemarketing call from or on behalf of Defendants' with a 12-month period, from four years prior the filing of the Complaint.

**VTPPA Class:** All natural persons in Virginia from two years prior to the filing of the initial complaint in this action through class certification, (1) from or on behalf of Defendants' called, (2) for substantially the same purpose that Mr. Bryant was called, (3) after the person's phone number had been listed on the national Do Not Call registry.

128.   The Plaintiffs are members of and will fairly and adequately represent and protect the interests of, these Classes as he has no interests that conflict with any of the class members.

129.   Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

130.   Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

131.   This Class Action Complaint seeks injunctive relief and money damages.

132.   The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

133.   Plaintiffs do not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

134.   The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

135.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

136.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

137.    There are numerous questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

(a)  whether Defendants utilized an automatic telephone dialing system to send its to the members of the Robocall Class;

(b)  Whether agents operating on behalf of Defendant utilized an automatic telephone dialing system in sending automated calls to members of the Robocall Class;

(c)  whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(d)  whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(e)  whether Defendants' conduct constitutes a violation of the TCPA; and

(f)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

138.    Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have no interests which are antagonistic to any member of the Classes.

139.    Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

140.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

141.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

142.     Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the Robocall Class**

143.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

144.     The Defendants violated the TCPA by sending, or causing to be sent via an agent, automated calls to the cellular telephones of Plaintiffs and members of the Robocall Class using an automated dialer without their prior express written consent.

145.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

146.     The Plaintiffs and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

147.    Plaintiffs and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, using an ATDS or pre-recorded voice in the future.


## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))
### on behalf of the National Do Not Call Registry Class

148.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

149.    The Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing automated calls within a 12-month period to Plaintiffs and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

150.    As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

151.    Plaintiffs and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

152.    The Defendants' violations were knowing or willful.

## THIRD CAUSE OF ACTION
### Violation of the Virginia Telephone Privacy Protection Act
### (Va. Code Title 59.1, Chapter 44) on behalf of the

**VTPPA Class**

153.    Plaintiff Bryant incorporates by reference the foregoing allegations as if fully set forth herein.

154.    The Defendants violated the VTPPA by making, or having its agent make, telemarketing calls to individuals on the National Do Not Call Registry.

155.    As a result of the Defendants' violations of Va. Code Title 59.1, Chapter 44 *et seq.*, Plaintiff Bryant and the VTPPA Class members are entitled to an award of up to $1500 in statutory damages as well as an award or attorney fees.

156.    The Defendants' violations were knowing or willful.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B.    As a result of the Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Robocall Class member up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C.    As a result of the Defendants' willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiffs seeks for themselves and each member of the National Do Not Call

Registry Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

D.      As a result of the Defendants' violations of Va. Code Title 59.1, Chapter 44, Plaintiff Bryant seeks for themselves and each member of the VTPPA Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the VTPPA as well as an award or attorney fees.;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated: May 6, 20                    PLAINTIFFS, on behalf of herself
                                    and others similarly situated,

                                    */s/ Anthony Paronich*_____
                                    Anthony Paronich
                                    Email:  anthony@paronichlaw.com
                                    PARONICH LAW, P.C.
                                    350 Lincoln Street, Suite 2400
                                    Hingham, MA 02043
                                    Telephone:  (617) 485-0018
                                    Facsimile:  (508) 318-8100

                                     /s/ William P. Robinson_____
                                     William P. Robinson

Email: [william@robinsonslaw.com](mailto:william@robinsonslaw.com)
William P. Robinson Esq.
1934 Old Gallows Road, Suite 350K
Vienna, Virginia 22182
Telephone: 703-789-4800

*Attorneys for Plaintiff*